THE LAW OFFICE OF PETER SWARTH
PETER SWARTH, SBN 143573
6442 Platt Ave., #557
West Hills, CA 91307
Telephone: (818) 887-8800
Facsimile: (818) 887-8802
E-Mail: pswarth@gmail.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARLOS ALBERTO PENA GOYENECHE,<br><br>Defendant. | **Case No. 2:24-CR-00369(A)-SPG-6**<br><br>CARLOS ALBERTO PENA GOYENECHE'S REPLY TO THE PROSECUTION'S SENTENCING POSITION<br><br>Sentencing Hearing: November 18, 2026<br>The Honorable Sherilyn Peace Garnett |

To the Honorable Sherilyn Peace Garnett of the United States District Court for the Central District of California:

Defendant Carlos Alberto Pena Goyeneche, by and through his attorney, Peter Swarth, hereby submits this reply to the Prosecution's Sentencing Position. This reply is based upon the attached Memorandum of Points and Authorities, all matters of

which the Court may properly take judicial notice, and on such further evidence as may be presented at or before the sentencing hearing.

Dated: November 8, 2026

Respectfully submitted,

*s/*__________

Peter Swarth, Attorney for Carlos Alberto Pena Goyeneche

# REPLY TO THE PROSECUTION'S SENTENCING POSITION

## INTRODUCTION

On November 5, 2026, soon before midnight, the Prosecution's Sentencing Position ("Prosec. Position") was filed, which included *responses* to Mr. Pena Goyeneche's Sentencing Position filed slightly earlier that same evening. Because the Prosecution's Sentencing Position included responses, here Mr. Pena Goyeneche reciprocally responds to the Prosecution's Sentencing Position. This reply is not exhaustive, but instead is confined to three selected major points: (A) the mitigating-role reduction; (B) the year Mr. Pena Goyeneche spent in pre-extradition custody in Colombia; and (C) avoiding sentencing disparities among co-defendants.

## I. Mr. Pena Goyeneche Is A "Courier," Entitled to The Four-Level Minimal-Role Reduction

The prosecution fails to defeat the mitigating-role adjustment. The prosecution misinterprets the 2025 Guidelines Amendment's "courier" provision. USSG § 2D1.1(e)(2)(B)(i). As quoted in the Prosecution's Sentencing Position (at 9 – 10), Guidelines Section 2D1.1(e)(2)(B) has two provisions, as follows:

- subsection (i) states that the mitigating-role adjustment applies "if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a **courier**, running errands, sending or receiving phone calls or messages, or acting as a lookout" (USSG § 2D1.1(e)(2)(B)(i)) (emphasis added);
- subsection (ii) states that the mitigating-role adjustment applies "if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in **user-level quantities** . . ." (USSG § 2D1.1(e)(2)(B)(ii) (emphasis added)).

Crucially, the two subdivisions are connected by the term **"or"** (i.e., a *disjunctive* conjunction). USSG § 2D1.1(e)(2)(B)(i)-(ii) (emphasis added).

Based on the above-quoted language, the definition of "courier" does *not* include a maximum-quantity cutoff. The Prosecution's Sentencing Position (at 10) argues that subsection (ii)'s term "user-level quantities" defines subsection (i)'s term "courier"; yet, in actuality, *the opposite conclusion* is true. "We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017) (citing *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009)). "**[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act**, it is generally presumed that Congress acts **intentionally and purposely in the disparate inclusion or exclusion**." *United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012) (emphasis added) (quoting *Kucana v. Holder,* 558 U.S. 233, 130 S.Ct. 827, 838 (2010)).[1] Accordingly, it is significant that subsection (i) describes "a courier" while *omitting* any reference to drug quantity, whereas the adjacent subsection (ii) requires "user-level quantities" for roles involving "distributing controlled substances" (USSG § 2D1.1(e)(2)(B)(ii)); i.e., subsection (i)'s *omission* is presumed to be *deliberate*. Hence, there is no drug-quantity cutoff for the "courier" role.

Case law, under the 2025 Guidelines Amendment, supports the conclusion that the definition of "courier" does not include any quantity requirements. In *United States v. Maciel*, 789 F. Supp. 3d 934 (S.D. Cal. 2025), the court granted a four-level minimal-role reduction under the 2025 amendment to a defendant stopped driving a car loaded with "approximately 27 brick-shaped objects, which weighed

---

[1] *See also see also Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 971 (9th Cir. 2019) (same quotation) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)); *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of **different words or terms within a statute** demonstrates that Congress intended to convey a **different meaning for those words**.") (emphasis added) (collecting cases).

approximately 31.19 kilograms and field-tested positive for fentanyl, and 20 oblong-shaped objects, which weighed approximately 10.4 kilograms and field-tested positive for methamphetamine." *Id.* at 935. The *Maciel* Court explained:

> The Court agrees with Maciel that a person whose only function is to transport drugs—**regardless of the amount of drugs they are transporting** and regardless of whether they are transporting drugs across an international border—**is a "courier" in the context of the amended § 2D1.1(e)(2)(B)(i)**, and that Maciel acted only as a courier in this offense.

*Id.* at 937 – 38.

Even before the 2025 Guidelines Amendment's *expansion of the mitigating-role departure*, the Ninth Circuit had recognized that the definition of "courier" was *not* based on drug quantity. In *United States v. Demers*, 13 F.3d 1381 (9th Cir. 1994), the Ninth Circuit held that "a **courier** who possesses drugs for distribution as part of a trafficking scheme may be substantially **less culpable than a defendant who possesses the same amount of drugs for distribution** but has no ties to a trafficking scheme." *Id.* at 1385–86 (emphasis added). Thus, even prior to the 2025 Guidelines Amendment, the definition of "courier" did *not* include the drug quantity, but rather the nature of the defendant's activity.

The Prosecution's Sentencing Position provides no valid basis for disputing the PSR's characterization of Mr. Pena Goyeneche as "a courier" (PSR, ¶ 59) with a "mitigating role." Probation Department Letter (Dkt. 3119), p.5. The prosecution's sole cited case (*United States v. Lui*) is irrelevant, as it comes from decades prior to the 2025 Guidelines Amendment. Moreover, the passage at issue, in *Lui*, addressed courier activity ("typically they wrap it around their bodies or place it in false bottoms and tops of suitcases") in a *different context* – namely, the "drug courier profile," which is a Fourth Amendment construct used by agents to form reasonable suspicion (that the Ninth Circuit has denounced as improper substantive evidence of guilt).

*United States v. Lui*, 941 F.2d 844, 846 (9th Cir. 1991). (To the extent that, in other passages, *Lui* addresses the mitigating-role departure, it applies law that predates the 2025 Guidelines Amendment. *Lui*, 941 F.2d at 849.) Hence, the prosecution's cited authority does nothing to undercut the conclusion that Mr. Pena Goyeneche is entitled to a mitigating-role adjustment – namely, a four-level minimal-role adjustment.

## II. There Is No Merit to The Prosecution's Discussion of Accounting for The Year Mr. Pena Goyeneche Spent in Pre-Extradition Custody in Colombia

The prosecution objects that reducing the sentence to reflect Mr. Pena Goyeneche's approximately one year of pre-extradition custody in Colombia somehow "would effectively amount to double counting," and urges the Court to leave any credit to the Bureau of Prisons ("BOP"). Prosec. Position at 11 – 12.

Apparently, the prosecution's "double counting" concern rests on the possibility of this Court granting a variance based on the pre-extradition custody in Colombia, followed by the BOP granting the same sentencing reduction on the same grounds.

However, in reality, this Court's decision precedes the BOP's determination; thus, if this Court were to vary downward for the full time in custody in Colombia, then the BOP would not have any remaining basis for a reduction on those same grounds. A downward variance under 18 U.S.C. § 3553(a) is not a grant of statutory credit under 18 U.S.C. § 3585(b). A section 3585(b) credit can only be granted by the BOP – which can only make that determination **after the sentence commences**. *See United States v. Wilson*, 503 U.S. 329, 333–35 (1992) (holding that computation of section 3585(b) credit belongs to the Attorney General through the BOP, not the sentencing court); *United States v. Checchini*, 967 F.2d 348, 349–50 (9th Cir. 1992) (applying *Wilson* to claimed credit for pre-extradition house arrest in Italy). Accordingly, if the Court grants the requested section 3553(a) variance on the explicit basis of Mr. Pena Goyeneche's one year of pre-extradition custody in Colombia, then – at the time, after the sentence commences, when the BOP could otherwise have granted credit – the BOP would have no grounds to reduce Mr. Pena Goyeneche's

sentence based on the time in custody in Colombia. Hence, there would be no "double counting."

It is proper for a district court to reduce a sentence, based on the defendant having already served (non-federal) custodial time for the same offense. *See, e.g., United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563–64 (9th Cir. 1998) (en banc) ("the district court did not abuse its discretion in departing downward, in part, for the lost opportunity to serve state and federal time concurrently"). Accordingly, the district court has authority to vary downward, based on a defendant's having been in custody in another country for the same offense conduct. *See, e.g., United States v. Potapenko*, No. CR22-185RSL, 2025 WL 2443162, at **1, 4, 6 (W.D. Wash. Aug. 25, 2025), *appeal dismissed*, No. 25-5429, 2026 WL 2531681 (9th Cir. June 11, 2026) (ruling that "a major downward variance is justified" to sentences of "time served," based on circumstances including that "two defendants . . . have already been incarcerated for sixteen months in two countries as a result of their actions").

The Prosecution's own authority recognizes that the BOP credits foreign custody only "where that time was not credited to another sentence" (Prosec. Position at 12), and the Prosecution's Exhibit F reflects that Mr. Pena Goyeneche has no Colombian conviction against which the year could have been credited. The year he spent detained in Colombia solely because of this prosecution is real time he cannot recover, and this Court may recognize it in granting a downward variance for the amount of that time.

## III. There Is No Merit to the Prosecution's Discussion of Sentencing Disparities

The Prosecution urges a draconian sentence of 108 months on the ground that it would supposedly avoid unwarranted disparities, anchoring its comparison to co-defendant Iqbal Singh Virk, who received 108 months. Prosec. Position at 15–16. But the Prosecution's own description defeats the comparison: it states that Virk "held some sort of position of control and/or authority" and had "the demonstrated ability to direct other co-conspirators," while conceding there is "no evidence" that Mr. Pena

Goyeneche "had any sort of leadership role or control over others." Prosec. Position at 15–16. Equating a courier (Mr. Pena Goyeneche), who directed no one, with a participant who directed others (Virk) – on the strength of raw drug quantity – inverts the very mitigating-role principle that the 2025 Guidelines Amendment reinforces.

Far more germane is the fact that, as stated in Mr. Pena Goyeneche's original Sentencing Position, Co-Defendant Anthony Mendoza Lopez was sentenced to 41 months – even though *Lopez was a source from whom Mr. Pena Goyeneche retrieved cocaine* and Lopez was involved in other activities such as storage of bulk quantities of cocaine. PSR, ¶¶ 25, 35; Indictment (Dkt. 10), pp.4 – 5, ¶¶ 4 – 5. Hence, Mr. Pena Goyeneche's role was considerably *lesser* than that of Lopez – which means that Mr. Pena Goyeneche should receive a sentence substantially less than Lopez's 41 months. Accordingly, Mr. Pena Goyeneche should receive his requested sentence.

## IV. CONCLUSION

For the foregoing reasons, Mr. Pena Goyeneche respectfully requests that the Court impose a sentence of time served.

Dated: November 8, 2026 Respectfully submitted,

*s/*____________

Peter Swarth

Attorney for Carlos Alberto Pena Goyeneche